UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　**Plaintiff,**<br><br>　　v.<br><br>**ANTONIO M. STRONG,**<br><br>　　　　**Defendant.** | **CRIM. NO. 20-30033-MGM** |

GOVERNMENT'S MEMORANDUM IN SUPPORT OF THE PROBATION
DEPARTMENT'S RECOMMENDATION OF HOME INCARCERATION, WITH
ADDITIONAL CONDITION OF RELEASE

　　The United States of America, by and through its counsel, Andrew E. Lelling, United States Attorney for the District of Massachusetts and Steven H. Breslow, Assistant United States Attorney (the "Government"), respectfully requests the Court adopt the recommendation of the Probation Department to release the defendant Antonio Strong ("Strong" or the "defendant") subject to home incarceration and various other conditions, as set forth in its Memorandum dated January 27, 2021 (the "Memo"), with the additional condition that his Internet usage be either prohibited outright or severely restricted.

　　1.　　Preliminary Statement

　　As the defendant's Complaint and Indictment allege, starting in at least 2016, the defendant engaged in a brazen series of crimes that victimized numerous businesses and individuals and continued right up to the date of his arrest on September 12, 2020. The defendant is currently facing serious charges supported by overwhelming evidence that will likely result in a very lengthy prison sentence since they involve a high Guidelines range and at least one mandatory two-year prison sentence consecutive to any other form of imprisonment. Further, the defendant's crimes involve the repeated use of fraudulent documents, forged signatures, and the misuses of both real

and fictitious identification cards to procure, among other things, valuable transportation (such as private jet charters and elite vehicle rentals) and accommodation (such as luxury villas). The defendant also continued to commit crimes in spite of repeated prior contacts with federal and state law enforcement, thus demonstrating that he cannot abide by ordinary conditions of pre-trial release. Lastly, because the defendant's crimes can be committed from within the confines of any home with readily available digital devices like a cell phone, the Court must impose Internet restrictions on the defendant while he is in home incarceration.

2. Procedural History

On September 25, 2020, the defendant was charged in this District with a Complaint alleging that, between May 2016 and September 2020,[1] the defendant committed one count of Conspiracy To Commit Wire Fraud in violation of 18 U.S.C. § 1349. D.4. That same day, the defendant was arrested on the Complaint and presented to the District Court for the Northern District of Illinois. Docket No. 20-CR-676 (N.D. Ill.), D.1-3. On October 15, 2020, District Judge Robert M. Dow, Jr. ordered the defendant detained until his appearance in the District of Massachusetts based upon his risk of flight, but explained that the defendant would be free to seek pre-trial release from this Court after he arrived in Massachusetts. *Id.*, D-5.

On October 15, 2020, the defendant was charged in an Indictment with one count of Conspiracy To Commit Wire Fraud, four counts of Wire Fraud in violation of 18 U.S.C. § 1343, and nine counts of Aggravated Identity Theft in violation of 18 U.S.C. §§ 1028A and 2. D.9. The defendant has remained detained and is currently held at the Wyatt Detention Facility.

On January 26, 2021, the Probation Department recommended that the Court release the

---

[1] The Complaint's face page mistakenly listed the terminal year as 2019, rather than 2020 as stated in the Conclusion of the Affidavit submitted in support of the Complaint.

defendant to Home Incarceration with a number of additional conditions. Memo. Notably, the Memo did not contain any conditions relating to the defendant's Internet usage.

    3.    <u>The Indictment</u>

The Indictment alleges that the defendant presented himself as a promoter and manager of rappers, particularly those in the Chicago area, and used numerous aliases, including Michael Starkman," "Richard O'Malley," "Michael Lee," "Mark Daniels," "Sergio Parker," "Michael Leary," "Charles Gaut," "Darren Geiger," "Stan Smith," and "Tyson Kocher." *Id.*, ¶ 1.

From approximately March 2016 until the October 15, 2020, the defendant and his co-conspirators, Herbert Wright ("Wright"), Joseph Williams ("Williams"), Steven Hayes ("Hayes"), Demario Sorrells ("Sorrells"), and Terrance Bender ("Bender") conspired with each other and other co-conspirators to defraud numerous businesses and individuals throughout the United States by possessing, using, and transferring unauthorized and stolen payment card account information (the "illicit account information") to obtain valuable goods and services. *Id.*, ¶14.

The goods and services included private jet charters, private yacht charters, exotic car rentals, luxury hotel and vacation rental accommodations, private chef and security guard services, designer puppies, limousine and chauffer services, commercial airline flights, consumer goods, and meals and other incidentals. The illicit account information included the actual cardholders' names, addresses, payment card account numbers, security codes, and account expiration dates. *Id.*, ¶¶ 15-16.

Because the defendants and their co-conspirators provided authentic payment card information, the defrauded businesses and individuals successfully processed their transactions and provided the goods and services. When the actual cardholders discovered these transactions on their accounts and disputed the charges, and the payment card companies then reversed their

payments and charged back the transactions to the businesses and individuals, which consequently suffered losses in the amounts of the unauthorized transactions. *Id.*, ¶¶ 17-18.

The defendants committed their crimes by obtaining the illicit account information from dark web sites and from co-conspirators, transferring the illicit account information to each other through text messages, social media messages, e-mails, and oral telephone conversations, and presenting the illicit account information to their victims through online bookings, text messages, social media messages, e-mails, and oral telephone conversations. *Id.*, ¶ 20.

4. <u>Legal Standard</u>

Under the Bail Reform Act of 1984, pretrial detention is required if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The judicial officer must find either (1) by clear and convincing evidence, that the defendant is a danger to the community or (2) by a preponderance of the evidence, that the defendant poses a risk of flight. 18 U.S.C. § 3142(f).

Title 18, United States Code, Section 3142(g) outlines factors permitted to be considered by the judicial officer in determining a defendant's conditions of release, if any:

> [I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, [the judicial officer shall] take into account the available information concerning–
>
> (1)  The nature and circumstances of the offense charged . . .;
>
> (2)  the weight of the evidence against the person;
>
> (3)  the history and characteristics of the person, including
>
>   (A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community,

>>community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>>(B)　whether, at the time of the current offense or arrest, the person was on probation, on parole or on other release pending trial, sentencing, appeal, or completion of a sentence for an offense under Federal, State, or local law; and
>
>>(4)　the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

It is well-settled that danger in the context of the Bail Reform Act "was not meant to refer only to the risk of physical violence, *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990), and can include economic or financial danger, such as that posed by a serial defrauder. *United States v. DeSimone*, Crim. No. 09–024S, 2009 WL 904688 (D.R.I. 2009) (citing *United States v. Persaud*, No. 05–CR–368, 2007 WL 1074906 (N.D.N.Y. April 5, 2007) ("economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); *United States v. Giordano*, 370 F.Supp.2d 1256, 1270 (S.D. Fla. 2005) ("no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act."); *United States v. Madoff*, 586 F.Supp.2d 240, 253 and n. 11 (S.D.N.Y. 2009); *United States v. Giordano*, 370 F.Supp.2d 1256, 1270 (S.D. Fla. 2005) (stating "[t]here can be no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act").

Thus, "one may be considered a danger to the community even in the absence of a finding by clear and convincing evidence that the accused will engage in physical violence." *United States v. Arndt*, 329 F.Supp. 2d 182, 185 (D. Mass. 2004) (citing Committee on the Judiciary Report that "the language referring to the safety of the community refers to the danger *that the defendant might*

*engage in criminal activity to the detriment of the community*.").

At the detention hearing, "the rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information . . . ." 18 U.S.C. § 3142(f).

5.     <u>While In Home Incarceration, The Defendant's Internet Usage Should Be Prohibited Or, In the Alternative, Monitored and Restricted</u>

The Government agrees with the Probation Department that the defendant's release to Home Incarceration is sufficient to guard against the defendant's risk of flight. However, for the following reasons, the Government respectfully submits that the Court either prohibit or, in the alternative, monitor and restrict, the defendant's Internet use to ensure that he does not pose a danger to the community by committing further fraud and identity theft.

First, as the Indictment demonstrates, the defendant's use of the Internet was essential to the commission of his crimes. The defendant obtained the illicit account information over the Internet from dark websites, exchanged the illicit account information with other co-conspirators through the Internet by e-mails, text messages, social media messages, and other digital means, and presented the illicit account information to his victims in the same manner.

Second, the defendant has continued to commit his crimes in spite of repeated interactions by law enforcement. For example:

   a.     <u>The Westin Hotel Fraud Arrest.</u>

On October 10, 2017, Chicago Police Department officers arrested the defendant at a Westin Hotel after he registered online for three hotel suites and used illicit credit card account information belonging to an individual victim to pay for the suites. The officers recovered a fictitious Florida Driver's License bearing the defendant's photograph and the name of Jermaine Smith. See Affidavit of Special Agent Tyler Martin in Docket No. 18-mj-3021-KAR dated

6

February 9, 2018 ("Martin February 9, 2018 Affidavit") at ¶¶ 104-05 and Exhibit 1 attached hereto (fictitious driver's license in the name of Jermaine Smith).

      b.      The ECS Fraud Operation.

On December 28, 2017, the Secret Service conducted a law enforcement operation at a private jet terminal in Chicago after ECS Charter Service, Inc. ("ECS") reported a potentially fraudulent private jet booking involving an individual named "Stan Smith" used the e-mail globalmarketingworldwide@gmail.com and the telephone number (424) 345-7984 to book a flight from Chicago to California. "Stan Smith" provided via e-mail a digitally signed credit card authorization form in the name of Darren Geiger of Seattle, WA for Visa x-7025 in the amount of $27,300. During the operation, Strong, his co-defendant Steven Hayes ("Hayes"), and others arrived at the terminal for the flight, but both Strong and Hayes attempted to flee when they observed the law enforcement officers. The officers ran after Strong, detained him, and recovered an iPhone that had been used to contact ECS to book the flight. Strong agreed to be interviewed and stated that he was not involved in the booking. Martin February 9, 2018 Affidavit, at ¶¶ 107-11.

Based upon the Martin February 9, 2018 Affidavit, the Government obtained a warrant to search Strong's iPhone and discovered evidence that Strong used the phone, through text messages, e-mails, and calls, to send credit card account information through text messages and e-mails in the names of other people to various co-conspirators, receive credit card account information in the names of other people from various co-conspirators; and use other people's credit card account information to purchase various goods and services for himself and other co-conspirators. Affidavit of Special Agent Tyler Martin in Docket No. 18-mj-3133-KAR dated October 18, 2018 ("Martin October 18, 2018 Affidavit") at ¶¶ 13-15.

7

These included text messages with Hayes, who used telephone number (312) 945-9999. For example, on October 15, 2017 (*i.e.,* five days after his arrest at the Westin Hotel), Strong sent Hayes credit card account information for x-8506 in the name of ML of Gig Harbor, Washington and instructed Hayes, "Stanley Smith is your name," sent Hayes an image of a Michigan Driver's License in the name of Stanley Smith, and cautioned Hayes, "It's a white guy so you gotta sound white." Exhibit 2 attached hereto (text messages between Strong and Hayes dated October 15, 2017).

  c.  The Suwannee, Georgia Fraud

According to police reports of the Suwanee (GA) Police department, on August 24, 2019, an individual (later determined to be Strong) used the name of Allen Collins, telephone number (323) 847-8031, and illicit account information belonging to KP to purchase thousands of dollars of furniture from a local store to be delivered to 3326 Bridle Brook Drive in Auburn, GA. On October 22, 2019, the Magistrate Court of Gwinnett County, GA issued criminal arrest warrants for Strong based upon this fraud. Affidavit of Special Agent Martin in Docket No. 20-mj-3176 to 3178-KAR dated October 8, 2020 ("Martin October 8, 2020 Affidavit"), at ¶¶ 7-15.

  d.  Strong's September 12, 2020 Arrest, the Waldorf Astoria Fraud, and the Search of Strong's iPhone 11

On September 12, 2020, the CPD arrested Strong based upon the Georgia warrants and seized an iPhone 11 from his front pants pocket. After receiving his *Miranda* warnings, Strong denied that the cell phone was his and said it belonged to a friend, whom he would not name. Strong also said that he knew the Secret Service was looking for him, and he denied any involvement with credit card fraud and fake identities. *Id.* at 20-22.

During the arrest, the CPD also seized from Strong a key card for room 2309 at the Waldorf

Astoria Chicago (the "Waldorf Chicago").  According to the Operations Manager of the Waldorf Chicago, on or about September 7, 2020, an individual used the name "Justin Melton," the e-mail address justinmeltonbookings@gmail.com, and illicit account information to book several rooms. Video surveillance depicted Strong as one of the individuals who checked in to the rooms booked by "Justin Melton."  *Id.* at 45-47.

Based upon the Martin October 8, 2020 Affidavit, the Government obtained a warrant to search the iPhone 11 and discovered evidence that Strong used the phone, through various online and digital means, to commit continued fraud.  Affidavit of Special Agent Martin in Docket No. 20-mj-3189 to 3190-KAR, dated November 2, 2020 ("Martin November 2, 2020 Affidavit"), ¶ 14. For example, the iPhone 11 contained numerous images of drivers' licenses, identity cards, and payment cards in the names of Justin Melton and other individuals, and approximately 1,504 e-mails sent to or from justinmeltonbookings@gmail.com.  Exhibits 3 (list of image files and e-mail correspondence recovered from Strong's iPhone) and 4 (images of Justin Melton's driver's license and credit cards recovered from Strong's iPhone 11) attached hereto.

6. Conclusion

For the preceding reasons, the Government respectfully requests the Court adopt the conditions of release recommended by the Probation Department in the Memo, <u>with the following additional condition</u>:

> Do not access the Internet unless authorized by the United States Probation and Pretrial Services Office. Do not possess any computer or other device capable of connecting to the internet, including any tablet, cell phone, or gaming console. All computers and other devices capable of accessing the internet in the residence must be password protected and the defendant shall not have access to any password.  Family members' digital devices must be removed from the residence when they are not home.

In the alternative, the Government respectfully requests that the Court adopt the conditions

of release recommended by the Probation Department in the Memo, <u>with the following additional condition</u>: `

You may use a single digital device, but you must: (1) register that digital device with the Probation Department; (2) provide the password of that digital device to the Probation Department and not change it without notifying the Probation Department of the new password; (3) allow the Probation Department to install computer internet monitoring software on this digital device; (4) do nothing to interfere with or remove the monitoring software; (4) refrain from using that digital device to conduct any financial transaction of any kind, including but not limited to bookings of transportation and accommodations; (5) refrain from using that digital device to send or receive any personal identifying information, including the names, addresses, dates of birth, social security numbers, and financial account information of any other person; and (6) permit the Probation Department to conduct random searches of that digital device and any data contained therein.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   */s/ Steven H. Breslow*
STEVEN H. BRESLOW
(NY2915247)
Assistant U.S. Attorney
300 State Street, Suite 230
Springfield, MA 01105
413-785-0330
steve.breslow@usdoj.gov

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By:   */s/ Steven H. Breslow*

                                          STEVEN H. BRESLOW
                                          Assistant U.S. Attorney

Dated:  February 1, 2021