

**U.S. Department of Justice**

*Joshua S. Levy*
*Acting United States Attorney*
*District of Massachusetts*

---

*Main Reception: (413) 785-0235*

*United States Courthouse*
*300 State Street, Suite 230*
*Springfield, Massachusetts 01105*

September 17, 2024

Bernard T. O'Connor Jr. Esq.
O'Connor, Martinelli, Cohn, Pikula, & Cullinan
1391 Main Street, Suite 1022
Springfield, MA  01103

Counsel to Terrence Bender

> Re:   *United States v. Antonio M. Strong, et al.*, 20-CR-30033-MGM
>        <u>Plea Agreement:  Terrence Bender</u>

Dear Counsel:

The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and the U.S. Department of Justice's Criminal Division, Fraud Section (collectively, the "U.S. Department of Justice") and your client, Terrence Bender ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

1.   <u>Change of Plea</u>

No later than October 9, 2024 or as soon as is practicable for the Court, Defendant will plead guilty to Count One of the Indictment, Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349.  Defendant admits that Defendant committed the crime specified in this count and is in fact guilty of it.

The U.S. Department of Justice agrees to dismiss Counts Twelve and Thirteen of the Indictment following the imposition of sentence at Defendant's sentencing.

Defendant agrees to the accuracy of the attached Statement of Facts.

1

2.    <u>Penalties</u>

Defendant faces the following maximum penalties: incarceration for twenty years; supervised release for three years; a fine of $250,000; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Indictment.

Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3.    <u>Sentencing Guidelines</u>

The U.S. Department of Justice and Defendant agree, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 14:

  a)  Defendant's base offense level is 7 because the offense of conviction has a statutory maximum term of conviction of 20 years or more (USSG §2B1.1(a)(1));

  b)  Defendant's offense level is increased by 8, because Defendant's loss involved between more than $95,000 and less than $150,000 (USSG §2B1.1(b)(1)(E); and

  c)  Defendant's offense level is increased by 2, because the offense involved 10 or more victims (USSG §2B1.1(b)(2)(A)(i));

  d)  Defendant's offense level is decreased by 3, because Defendant clearly demonstrated accepted responsibility for his offense (USSG §3E1.1(a)).

The U.S. Department of Justice will not oppose a two-level offense level reduction if the Court determines that the Defendant meets the criteria listed in the adopted Section 4C1.1

Defendant reserves the right to argue for a below-Guidelines sentence, including a term of probation.

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the U.S. Department of Justice will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for

having engaged in the conduct underlying each of the elements of the crimes to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

Nothing in this Plea Agreement affects the U.S. Department of Justice's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4. <u>Sentence Recommendation</u>

The U.S. Department of Justice agrees to recommend the following sentence to the Court:

a) incarceration within the Guidelines sentencing range as calculated by the Court at sentencing, excluding departures;

b) a fine within the Guidelines sentencing range as calculated by the Court at sentencing, excluding departures, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

c) 36 months of supervised release;

d) a mandatory special assessment of $100, which Defendant must pay to the Clerk of the Court by the date of sentencing;

e) restitution of $103,811.22[1]; and

f) forfeiture as set forth in Paragraph 6.

Restitution is payable as follows:

| Victim | Amount |
|---|---|
| All About Charter Inc. | $229.50 |
| American Airlines | $670.60 |
| Ames Boston Hotel | $1,747.67 |
| Big G's Pizza | $132.09 |
| Coco's Famous Fried Lobster | $59.48 |
| Courtyard Marriott Atlanta Midtown | $2,092.11 |
| Dreamline Aviation | $21,064.31 |
| Empire Exotic Car Rental | $2,051.21 |

---

[1] American Airport Car Service and Woof Woof Puppies are listed in the loss amount specified in the Statement of Facts, but not in the restitution chart because Defendant Herbert Wright already paid restitution to these victims for the same conduct.

3

| Victim | Amount |
|---|---|
| Extended Stay | $572.34 |
| HyreCar | $1,014.60 |
| Instacart | $290.90 |
| JBP Car Service | $439.24 |
| Keep It 1200 | $15,141.00 |
| Kenny's Ribs and Chicken | $178.07 |
| Louisiana Famous Fried Chicken | $51.89 |
| NTS Corporate Housing | $18,400.03 |
| Outback Steakhouse | $167.36 |
| ParkWhiz | $42.00 |
| Pelican Suites, LLC | $8,532.15 |
| Progressive Insurance | $1,649.00 |
| Sheraton Marriott Atlanta | $353.58 |
| Southwest | $1,122.12 |
| Trino's Pizza | $133.35 |
| United Airlines | $528.62 |
| Venmo | $2,987.00 |
| Word Travel Holdings, Co. | $24,161.00 |
| **TOTAL** | **$103,811.22** |

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

5.      Waiver of Appellate Rights and Challenges to Conviction or Sentence

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

a)   Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

b)   Defendant will not challenge any prison sentence of 21 months or less or any

4

court orders relating to forfeiture, restitution, fines or supervised release. This provision is binding even if the Court's Guidelines analysis is different than the one in this Agreement.

The U.S. Department of Justice agrees that, regardless of how the Court calculates Defendant's sentence, the U.S. Department of Justice will not appeal any sentence of imprisonment of 10 months or more.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence (to the extent set forth in subparagraph (b), above) will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence (to the extent set forth in subparagraph (b), above), regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Department of Justice is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

6.      <u>Forfeiture</u>

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following: $103,811.22 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

Defendant admits that $103,811.22 is subject to forfeiture on the grounds that it is equal to the amount of proceeds the defendant derived from the offense and the amount of money involved in Defendant's offense.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents proceeds the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crimes to which Defendant is pleading guilty and that, due at least in part to the acts or omissions of Defendant, the proceeds or property have been transferred to, or

deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty.  Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

If the U.S. Department of Justice requests, Defendant shall deliver to the U.S. Department of Justice within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest.  Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Department of Justice. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

7.     Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

8.     Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Department of Justice the right to be released from the U.S. Department of Justice's commitments under this

Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the U.S. Department of Justice during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9.    Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts and the U.S. Department of Justice's Criminal Division, Fraud Section. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10.    Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\*        \*        \*

*    *    *

If this letter accurately reflects the agreement between the U.S. Department of Justice and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below.  Please also sign below as Witness.  Return the original of this letter to Assistant U.S. Attorney Steven H. Breslow.

Sincerely,

JOSHUA S. LEVY
Acting United States Attorney

By:  _____

NEIL DESROCHES
Chief, Springfield Branch Office

Steven H. Breslow
Digitally signed by Steven H. Breslow
Date: 2024.09.17 14:48:22 -04'00'
_____

STEVEN H. BRESLOW
Assistant U.S. Attorney

GLENN S. LEON
Chief, U.S. Department of Justice
Criminal Division, Fraud Section

_____

ANDREW R. TYLER
Trial Attorney

_____

KYLE CRAWFORD
Trial Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts and the U.S. Department of Justice's Criminal Division, Fraud Section (the "U.S. Department of Justice"). There are no unwritten agreements between me and the U.S. Department of Justice, and no U.S. Department of Justice official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crime I am pleading guilty to, and the maximum penalties for that crime. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

_____
Terrence Bender
Defendant

Date: October 3 2024

I certify that Terrence Bender has read this Agreement and that we have discussed what it means. I believe Terrence Bender understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Department of Justice has not extended any other offers regarding a change of plea in this case.

_____
Bernard T. O'Connor, Jr., Esq.
Attorney for Defendant

Date: 10-7-24

9

**Statement of Facts**
*United States v. Antonio M. Strong, et al.*
20-CR-30033-MGM
Terrence Bender

## Overview

1.       Between at least January 25, 2017 through and including December 16, 2018, the defendant Terrence Bender ("Bender") conspired with Antonio M. Strong ("Strong") and others to defraud businesses and individuals by possessing, using, and transferring unauthorized and stolen payment card account information (the "illicit account information") to obtain valuable goods and services.  During this time, Strong was a music promoter, Bender was a rap artist known as "Blends" and "Dopeblends," and each were based in the area around Chicago, IL.

2.       The illicit account information included the actual cardholders' names, addresses, payment card account numbers, security codes, and account expiration dates.  Strong and his co-conspirators referred to the illicit account information as "moves" or "joints."

3.       To perpetrate the fraud, Strong, Bender, and others used various telephone numbers, email accounts with fictitious names and companies, and aliases such as "BH," "Walter O'Malley," "Walter Calderon," "Stanley Smith," and "Darren Geiger."   BH is a real person and resident of the Chicago area who never authorized, or even knew about, the transactions in his name that are set forth herein.  Walter O'Malley, Walter Calderon, Darren Geiger, and Stanley Smith are fictitious identities.

4.       Generally, because Strong and his co-conspirators provided authentic payment card information, the defrauded businesses and individuals successfully processed their transactions and provided the goods and services.  The actual cardholders discovered these transactions on their accounts and disputed the charges.  The actual cardholders' payment card companies then reversed

10

their payments and charged back the transactions to the businesses and individuals, which consequently suffered losses in the amounts of the unauthorized transactions.

### **Bender's Role In The Offense**

Bender's Phone Numbers and Email Accounts

5.       According to T-Mobile records, from February 19, 2017 to January 2, 2019, Bender was the subscriber of telephone number (773) 987-5682 (the "Bender x-5682 Phone").

6.       According to PayPal records, on or about October 23, 2017, Bender created an account with the Bender x-5682 Phone, the email address Globalmarketingworldwide@gmail.com (used in various frauds, including the Woof Woof Puppies, American Airport Car Service, and Progressive Insurance frauds specified below), and the address 7832 South Champlain [Avenue], Chicago, IL (the "Bender South Champlain address").

7.       According to Green Dot Bank records, on or about July 11, 2017, Bender opened a prepaid debit card account with the Bender x-5682 Phone and the Bender South Champlain address.

8.       According to Google records:

a.       Globalmarketingworldwide@gmail.com was created on October 23, 2017 with the account name "Stan Smith."

b.       Between February 15, 2017 and August 19, 2017, Bender sent several emails from dopeblends2017@gmail.com identifying himself as a celebrity barber and providing his telephone number as the Bender x-5682 Phone.

c.       TerrenceBender21@gmail.com      is      the      recovery      email      for Dopeblends2017@gmail.com.

d.      Dopeblends2017@gmail.com is the recovery email for calderonwalter45@gmail.com (an alias and an email used in various frauds, including the Dreamline Aviation fraud specified below).

9.      As set forth below, Bender used the Bender x-5682 Phone to communicate with Strong at (424) 345-7984 (the Strong x-7984 Phone) by text message regarding illicit account information, including to receive illicit account information pertaining to the Dreamline Aviation fraud.

10.      According to AT&T Wireless records, between September 27, 2017 and December 15, 2017, (818) 630-6735 was a Go Phone pre-paid phone subscribed to "Darren Johnson" with the email address Globalmarketingwoldwide@gmail.com (the "Global x-6735 Phone").  As set forth below, (818) 630-6735 was used in various frauds involving Bender, including the World Travel Holdings Co. and Progressive Insurance frauds.

11.      On October 23, 2017 – *i.e.*, the same day that Bender created the PayPal account with globalmarketingworldwide@gmail.com - the Bender x-5682 Phone had three contacts with the Global x-6735 Phone.

The Dreamline Aviation Fraud

12.      NC is a resident of Juneau, AK with a Visa Signature credit card account ending in x-9362 ("the NC x-9362 Account").  SE is a resident of Templeton, CA with a Visa Signature credit card account ending in x-5683 ("the SE x-5683 Account").  MG is a resident of Lake Stevens, WA with a Visa Signature credit card account ending in x-5032 ("the MG x-5032 Account").

13.      Dreamline Aviation ("Dreamline") is a private jet charter company based in Van

Nuys, CA.  JS is Dreamline's Vice President of Client Services.  As set forth below, on October

18, 2017, co-conspirators identifying themselves as "Darren Geiger" and "Walter Calderon"

engaged Dreamline for a private jet flight from California to Georgia and provided illicit account

information to pay for the flight.

14.     On October 18, 2017, the Strong x-7984 Phone texted the Bender x-5682 Phone

the following two text messages:

> a.     6:12 p.m.:  Illicit account information for an account held by NC, including:
> NC's full name and address and the full account number, expiration date, and
> security code for an account ending in x-0153 (the "NC x-0153 Account").

> b.     6:16 p.m.: The following message, which purported to be a message from
> "Darren Geiger" to "Walter [Calderon]" concerning illicit account information for
> the NC x-0153 Account, including the full account number, expiration date, and
> security code:

>> FWD:  Hey Walter Please Let Them Know I'm Currently
>> Taking Off As I'm Sending this email . . . Please Have Them
>> Take 4K From First Charge.  ADD MY PERSONAL CARD
>> FOR REMAINS . . . Account Darren Geiger []-0153.  EXP:
>> [] Security Code on the back [].  Zip:  [].  Thanks Let Them
>> Know Anything They Need I Can Handle When I Land!"

15.     As set forth below, on October 18, 2017, at 6:19 p.m. (*i.e.*, three minutes later),

Bender used the calderonwalter45@gmail.com account to send an email to Dreamline containing a

verbatim copy of the message that Strong sent in his text to Bender just minutes earlier.  [As set

forth above, Bender's email account, dopeblends2017@gmail.com, is the recovery email account for

calderonwalter45@gmail.com.]

16.     According to Dreamline records and information provided by JS, on October 18,

13

2017, an individual named "Darren Geiger" requested a flight from Sacramento, California to Atlanta, Georgia. "Geiger" made the initial contact with Dreamline, but then transitioned communications to his associate, "Walter Carlderon." To communicate with Dreamline, "Geiger" used tillyphil2@gmail.com and "Calderon" used calderonwalter45@gmail.com.

17.     Geiger initially provided JS account information for the SE x-5683 Account, but Dreamline was unable to process the full amount of the flight ($33,134) on this account. "Geiger" later docusigned a credit card authorization form with the MG x-5032 Account in the amount of $33,134. JS contracted with another company, XOJet, to provide the airplane.

18.     "Calderon" told JS that "Geiger" was a "big player," but he refused to provide photographs of the back and front of the payment cards as proof that the account information was authentic. Ultimately, JS became suspicious and canceled its contract with XOJet, resulting in a cancellation fee of 50% of the cost of the flight that JS asked passed on to Dreamline's purported customers.

19.     JS engaged in a series of email communications with Bender at calderonwalter45@gmail.com, including:

    a.     JS:  Walter, Did you receive my email regarding the flight today?

    b.     "Walter Calderon":  What's the exact amount that's needing to be charged?

    c.     JS:  $17,064.31.

    d.     "Walter Calderon":  FWD:  Hey Walter Please Let Them Know I'm Currently Taking Off As I'm Sending this email . . . Please Have Them Take 4K From First Charge.  ADD MY PERSONAL CARD FOR REMAINS . . . Account Darren Geiger []-0153.  EXP:  [] Security Code on the back [].  Zip:  [].  Thanks

14

Let Them Know Anything They Need I Can Handle When I Land!"

20. Consistent with the amounts specified in this email exchange above, on or about October 18, 2017, Dreamline transacted two charges on the MG x-5032 Account (rather than the NC-0153 Account): $17,064.31 and $4,000. According to bank records for the MG x-5032 Account, MG disputed both charges as fraudulent and they were ultimately charged back to Dreamline, resulting in a loss of $21,064.31.

<u>The World Travel Holdings Co. ("WTHC") New York Villa Fraud</u>

21. WD is a resident of Manson, WA with a VISA Signature account ending in x-0458 ("the WD x-0458 Account").

22. WTHC is a travel company based in Boston, MA.

23. On November 13, 2017, Bender and/or another co-conspirator used the names "Stan Smith" and "Darrin Geiger" and globalmarketingwoldwide@gmail.com to request a villa rental in New York City for November 13-17, 2017.

24. The rental agreement form was digitally executed in the name of a Strong associate, RH, and the accompanying traveler information form listed five other individuals, including Bender, and Bender's email address DopeBlends2017@gmail.com.

25. The credit card authorization form listed telephone number (818) 630-6735 (the same telephone number that was listed on Bender's Progressive Insurance auto insurance policy) and illicit account information for the WD x-0458 Account, and it was digitally signed by "Darren Geiger" as the cardholder.

26. WTHC transacted $15,961 on the WD x-0458 Account, but refunded the security deposit of $3,000, and lost $12,961 after WD disputed the balance.

15

The Woof Woof Puppies, American Airport Car Service, and Progressive Insurance Frauds

27.     DB is a resident of Mercer, WI with a Visa Signature credit card account ending in x-5433 ("the DB x-5433 Account").

28.     Woof Woof Puppies ("Woof Woof") is a pet boutique in Southfield, MI that sells expensive "designer" puppies to celebrities and other affluent clients.   American Airport Car Service ("AA Car Service") is a car service business in Southfield, MI.   Progressive Casualty Insurance Co. ("Progressive") is a national insurance company.

29.     On the following dates, the DB x-5433 Account sustained the following fraudulent transactions:

    a.     November 29, 2017:  $9,500 and $958 at Woof Woof (for two puppies and their accessories).

    b.     November 30, 2017:  $752 at AA Car Service (for transportation from Woof Woof Puppies to Chicago, IL that was booked using the Bender x-5682 Phone).

    c.     December 3, 2017:   $224.20, $224.20, $8.52, and $8.42 at American Airlines (for passengers DW and KW).

    d.     December 3, 2017:  Progressive (for Bender's auto insurance policy).

The Woof Woof Fraud

30.     According to records and information provided by Woof Woof's owner (JF) and Woof Woof's manager (JS), on November 29, 2017, JF received a telephone call from a person calling himself "Darren Geiger" (later determined to be Strong) who stated that he was with "Empire" and wanted to purchase puppies for his client, co-defendant Herbert Wright III ("Wright").   "Geiger" provided JF with Wright's Instagram account and told her to check it out.

JF did so, and learned that Wright had a validated Instagram account with several million followers.

31.     "Geiger" called from the Global x-6735 Phone (*i.e.*, the phone listed for Bender in his Progressive Insurance auto policy and the phone used in the WTHC New York villa fraud).  JF and "Geiger" engaged in a series of telephone calls and text messages throughout the day, and "Geiger" ultimately decided to purchase two puppies and accessories for $10,458.  "Geiger" provided account information for the DB x-5433 Account, a [fictitious] driver's license identifying him as a resident of Monroe, WA, and the email address Globalmarketingworldwide@gmail.com (*i.e.*, the same email address as listed in Bender's Progressive Insurance auto policy and in Bender's PayPal account).  When JF asked that "Geiger" photograph himself with the driver's license and credit card, he refused.  When JF asked that "Geiger" FaceTime, he similarly refused.

32.     JF then asked "Geiger" to speak with Wright to confirm that he was actually obtaining the puppies, and an individual using telephone number x-9999 (used by co-defendant Steven Hayes, Jr.) called and claimed to be Wright.  JF asked "Wright" to message her by Instagram.  JF then sent Wright's Instagram account a message stating "Message me here." [Unbeknownst to JF, Strong then sent Wright a text message stating: "Check dm [.]  Hurry just msg that bitch hello."]  Wright then sent a message to the Woof Woof owner's Instagram account, writing "Hello."  JF inquired whether Wright was getting two puppies, and Wright responded, "Yes."  JF then transacted two charges - $9,500 and $958 – for the puppies and the accessories with the DB x-5433 Account information.  JF asked "Geiger" about delivery, and "Geiger" responded that he had hired a limo driver.

### The AA Car Service Fraud

33.     Also on November 29, 2017, a co-conspirator used the Bender x-5682 Phone and the "Geiger" alias to order a car from AA Car Service to pick up the puppies from Woof Woof. During the call, the co-conspirator conferenced the Woof Woof owner, JF,  to convince AA Car Service that this was a legitimate pickup.  This call was recorded, and the audio file contains the date and the full telephone number of the Bender x-5682 Phone in the file title: 0d**20171129**143138p**7739875682**.m4a (emphasis added).  In the recording, "Geiger" provided his contact email as globalmarketingwoldwide@gmail.com and the DB x-5433 Account for payment.

34.     Later that day, an AA Car Service driver picked up the puppies, transported them to Chicago, and delivered them to a man (Strong) whom the driver photographed as proof that the puppies had been delivered.  AA Car Service transacted $752 on the DB x-5433 Account for payment.

### The Progressive Fraud

35.     On December 3, 2017, Bender used the same DB-x5433 Account used in the Woof Woof and AA Car Service frauds to make a fraudulent and unauthorized payment of $1,649 for automobile insurance in his own name from Progressive.

36.     Bender's Progressive account records list his address as the Bender South Champlain Address,  his phone as the Global x-6735 Phone, and his email as globalmarketingworldwide@gmail.com  (*i.e.*, the same email account used in the Woof Woof and WTHC New York Villa frauds).  Progressive Insurance lost $1,649 after DB disputed the charge.

### Communications Concerning Cards and Co-Defendant Williams

37.     On December 25, 2017, Bender engaged in the following text exchange with the

18

Strong x-7984 Phone:

      a.      Bender:  "U good wit the cards[?]"

      b.      Strong x-7984 Phone:  "Where yal at[?]  U by Rodie [*i.e.*, the nickname of co-defendant Joseph Williams] yet[?]"

The JS Account Holder Frauds

38.      JS is a resident of Aurora, OR with VISA Signature Account x-3258 ("the JSS x-3258 Account").  According to Bank of America records, the JS x-3258 Account sustained the following fraudulent transactions:

      a.      October 31, 2017:  $391.96 at unidentified location.

      b.      November 12, 2017:  $221.98 at Southwest Airlines (for JK).  [On November 12, 2107, Southwest Airlines emailed Bender's account, dopeblends2017@gmail.com, an itinerary for JK to fly from Atlanta, GA to Boston, MA on November 12, 2017.  The itinerary listed the cost as $221.98 and the payment as Visa x-3258].

      c.      November 12, 2017:  $167.36 at Outback Steakhouse (Somerville, MA).  [On November 12, 2017, Outback emailed dopeblends2017@gmail.com an online order confirmation that listed the cost of $152.36 (without tip) and payment method as Visa x-3258).

      d.      November 13, 2017:

            i.      $569.95 at Ames Boston Hotel.

            ii.      $650.06 at Ames Boston Hotel

            iii.      $484.86 at Ames Boston Hotel

19

[On November 12, 2017, "Stan Smith" at globalmarketingworldwide@gmail.com (listed in Bender's Progressive auto policy) emailed Ames Boston Hotel a credit card authorization form digitally signed by "Darren Geiger" for guests in the names of co-defendant Joseph Williams and Strong associate RH.  The form listed the JS x-3258 Account and the Global x-6735 Phone (listed in Bender's Progressive auto policy)].

[According to Ames Boston Hotel records, these charges related to rooms in the names of "Joseph Williaks [sic]" and RH from November 11-13, 2017.].

e.       November 13, 2017:

i.       $240.75 at PAW JBP Car Service

ii.      $198.49 at PAW JBP Car Service

[According to records of JBP Car Service, an unnamed manager called from the Global x-6735 Phone to request transportation for two clients, DJ Mousal and Jatoriana, from area airports to the House of Blues in Boston, MA.  JBP transported the clients as requested and lost a total of $439.24].

f.       November 14, 2017:

i.       $19.26 at Ames Boston Hotel

ii.      $23.54 at Ames Boston Hotel

[According to Ames Boston Hotel records, these charges related to rooms in the names of "Joseph Williaks [sic]" and RH from November 11-13, 2017.].

g.      November 30, 2017: $117.98 at Timberland eComm

h.      December 1, 2017: $41.99 at Amazon.com

i.      December 3, 2017: $272.98 at Amazon.com

The WF Account Holder Frauds

39.    WF is a resident of Eugene, OR with a Visa Signature account ending in x-5898/6441 ("the WF x-5898/6441 Account"). According to BOA records, the WF x-5898/6441 Account sustained a series of fraudulent charges, including the following:

a.      January 3, 2018: $500, $1,500, $4032.15, and $2,500 at Pelican Stay.

40.    According to records of Pelican Suites ("Pelican"), these charges related to Bender's booking at a two-bedroom apartment in Chicago maintained by Pelican from January 3, 2018 to January 31, 2018. The Pelican records include a copy of Bender's Illinois driver's license and a credit card authorization form for the WF x-6641 Account that was digitally signed by "Darren Geiger."

Miscellaneous Other Frauds

41.    The loss table below includes miscellaneous other frauds as well as the frauds specified above.

**Loss Attributed to Bender**

42.    Based upon the following calculation, the loss attributed to Bender is $127,092.13:

| Date | Amount | Victim / Thing of Value | Card No. | Notes |
|---|---|---|---|---|
| 01/25/2017 | $69.85 | Trino's Pizza | x4045 | Purchased using dopeblends2017@gmail.com |
| 01/29/2017 | $51.89 | Louisiana Famous Fried Chicken | x4976 | Purchased using dopeblends2017@gmail.com |
| 01/29/2017 | $63.50 | Trino's Pizza | x4976 | Purchased using dopeblends2017@gmail.com |

| Date | Amount | Victim / Thing of Value | Card No. | Notes |
|---|---|---|---|---|
| 02/05/2017 | $132.09 | Big G's Pizza | x5386 | Purchased using dopeblends2017@gmail.com |
| 02/19/2017 | $11,200.00 | Villas of Distinction (WTHC) | x0150; x0458 | Booking Name |
| 02/21/2017 | $59.48 | Coco's Famous Fried Lobster | x7131 | Purchased using dopeblends2017@gmail.com |
| 10/18/2017 | $33,134.59 | Dreamline Aviation[2] | x0153, x5032 | Text message from Strong to Bender enclosing email sent to Dreamline Aviation for x0153 account |
| 11/10/2017 | $2,092.11 | Courtyard Marriott Atlanta Midtown | x0604 | Guest Name |
| 11/10/2017 | $572.34 | Extended Stay / Atlanta | x9271 | Guest Name |
| 11/12/2017 | $167.36 | Outback Steakhouse | x3258 | Purchased using dopeblends2017@gmail.com |
| 11/12/2017 | $221.98 | Southwest / Atlanta to Boston | x3258 | Purchased using dopeblends2017@gmail.com |
| 11/13/2017 | $1,747.67 | Ames Boston Hotel | x3258 | Purchased using globalmarketingworldwide@gmail..com and the Global x-6735 Phone |
| 11/13/2017 | $439.24 | JBP Car Service | x3258 | Purchased using the Global x-6735 Phone |
| 11/13/2017 | $12,961.00 | Villas of Distinction / Word Travel Holdings, Co. | x0150; x0458 | Rental agreement listed dopeblends2017@gmail.com |
| 11/18/2017 | $384.98 | Southwest / Chicago to Dallas | x1999 | Purchased using dopeblends2017@gmail.com |
| 11/20/2017 | $384.98 | Southwest / Dallas to Chicago | x0260 | Purchased using dopeblends2017@gmail.com |
| 11/21/2017 | $178.07 | Kenny's Ribs and Chicken | x0247 | Purchased using dopeblends2017@gmail.com |
| 11/22/2017 | $368.20 | American Airlines / Chicago to Birmingham | x2215 | Purchased using dopeblends2017@gmail.com |
| 11/29/2017 | $10,458.50 | Woof Woof Puppies | x5433 | Par. 27-32 |
| 11/30/2017 | $752.13 | American Airport Car Service | x5433 | Par. 33-34 |
| 12/02/2017 | $290.90 | Instacart | x2852 | Purchased using dopeblends2017@gmail.com |
| 12/03/2017 | $1,649.00 | Progressive Insurance | x5433 | Purchased in Bender's name |
| 12/05/2017 | $2,051.21 | Empire Exotic Car Rental | x6692; x7911 | Booking Name |
| 12/06/2017 | $353.58 | Sheraton Marriott Atlanta | x7380 | Booking Name |

---

[2] $21,064.31 is actual loss and the remaining $12,070.28 is intended loss.

| Date | Amount | Victim / Thing of Value | Card No. | Notes |
|---|---|---|---|---|
| 12/07/2017 | $39.20 | United Airlines / Atlanta to Chicago | x0637 | Booking Name |
| 12/11/2017 | $118.98 | Southwest / Los Angeles to Chicago | x5949 | Booking Name |
| 12/11/2017 | $154.50 | Venmo | x9138 | Purchased using dopeblends2017@gmail.com |
| 12/11/2017 | $515.00 | Venmo | x9138 | Purchased using dopeblends2017@gmail.com |
| 12/11/2017 | $2,317.50 | Venmo | x9138 | Purchased using dopeblends2017@gmail.com |
| 12/20/2017 | $8,213.00 | NTS Corporate Housing | x9350; x6641; x5904 | Guest Name |
| 12/20/2017 | $10,187.03 | NTS Corporate Housing | x9350; x641; x5904; x6911; x9743 | Guest Name |
| 01/02/2018 | $496.80 | HyreCar | x6641 | Purchased using dopeblends2017@gmail.com |
| 01/03/2018 | $8,532.15 | Pelican Suites, LLC / Chicago | x6641 | Guest Name |
| 01/09/2018 | $517.80 | HyreCar | x5443 | Purchased using dopeblends2017@gmail.com |
| 01/18/2018 | $229.50 | All About Charter Inc. | x7651 | Purchased using dopeblends2017@gmail.com |
| 06/16/2018 | $489.42 | United Airlines / Los Angeles to Chicago | x8695 | Purchased using dopeblends2017@gmail.com |
| 09/30/2018 | $7,245.00 | Keep It 1200 | x9473 | Purchased using dopeblends2017@gmail.com |
| 10/5/2018 | $17.00 | ParkWhiz | x8106 | Purchased using dopeblends2017@gmail.com |
| 10/5/2018 | $25.00 | ParkWhiz | x8106 | Purchased using dopeblends2017@gmail.com |
| 10/8/2018 | $7,896.00 | Keep It 1200 | x8787 | Purchased using dopeblends2017@gmail.com |
| 12/13/2018 | $11.20 | Southwest / Chicago to Fort Lauderdale | x5504 | Booking Name |
| 12/16/2018 | $302.40 | American Airlines / Chicago to Miami | x2046 | Booking Name |
| TOTAL | $127,092.13 | | | |

---